United States District Court
Southern District of Texas
**ENTERED**
July 16, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| QUELONDA LURAYE GRAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:19-cv-01177 |
| | § | |
| ANDREW SAUL, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 17), Defendant's Responses to Plaintiff's Motion for Summary Judgment (Document Nos. 20 & 21), and Defendant's Motion for Summary Judgment (Document No. 19). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 17) is DENIED, and the decision of the Commissioner is AFFIRMED.

**I. Introduction**

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on June 28, 2019. (Document No. 10).

Plaintiff, Quelonda Luraye Gray ("Gray") brings this action pursuant to section 205(g) of the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for disability benefits ("DIB"), and Supplemental Security Income ("SSI"). Gray argues that the Commissioner committed errors of law and fact when he found that Gray was not disabled. Gray seeks an order reversing the Commissioner's decision and awarding benefits, or in the alternative, reversing the Commissioner's decision and remanding for further consideration. The Commissioner argues in response that there is substantial evidence in the record to support the decision that Gray was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II.  Administrative Proceedings

On August 15, 2016, Plaintiff filed applications for disability benefits and supplemental income alleging disability beginning on October 31, 2015. (Tr. 43, 180-191). These applications were denied on December 21, 2016 and again after reconsideration on March 30, 2017. (Tr. 43). Plaintiff filed a request for a hearing on April 6, 2017. (Tr. 43). A hearing was held before an administrative law judge ("ALJ") on February 14, 2018. (Tr. 58). The ALJ issued a decision denying Plaintiff's request on May 14, 2018. (Tr. 53).

Gray sought review by the Appeals Council of the ALJ's adverse decision. (Tr. 6). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest or (5) there is new and material evidence and the decision is contrary to the weight of all the record

evidence. After considering Gray's contentions in light of the applicable regulations and evidence, the Appeals Council, on January 24, 2019, concluded that there was no basis upon which to grant Gray's request for review. (Tr. 1-4). The ALJ's findings and decision thus became final.

### III.  Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is to "[determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Bowen*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 693; *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in

any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to determine disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, she will be found disabled.

*Id.*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.[2]

---

[2] Several of the Social Security Rulings ("SSRs") governing social security cases were amended or rescinded in 2016 and 2017. *See, e.g.,* 81 Fed. Reg. 66138-01, 2016 WL 5341732 (F.R. Sept. 26, 2016); 82 Fed. Reg. 5844-01, 2017 WL 168819 (F.R. Jan. 18, 2017). Depending on the regulation, the new rules apply to claims filed either on or after January 17, 2017, or March 27, 2017. The regulations provide, in pertinent part, that "[w]e expect that Federal Courts will review our final decisions using the rules that were in effect at the time we issued the

In the instant case, the ALJ determined, in his decision on May 14, 2018, that Gray was not disabled at step four. In particular, the ALJ determined that Gray met the insured status requirements for DIB through December 31, 2020, and that Gray has not engaged in substantial gainful activity since October 31, 2015, the alleged onset date (step one); that Gray's obesity, posterior and anterolateral meniscal tear, and lumbar spine degenerative disc disease were severe impairments and her right thumb arthritis, human immunodeficiency virus infection and depression were not (step two); and that Gray did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 of the regulations (step three). The ALJ further found that Gray has the RFC to perform light work with the following limitations:

> The claimant could stand and/or walk 4 hours combined in an 8-hour workday. The claimant could never climb ladders, ropes, or scaffolds. The claimant could occasionally climb ramps or stairs and could occasionally balance, stoop, kneel, crouch, and crawl. The claimant could never work at unprotected heights or around dangerous moving machinery. (Tr. 48).

Then, at step four, the ALJ found that Gray could perform past relevant work as a hospital unit clerk in spite of her impairments and limitations, and that Gray was therefore not disabled. As a result, the Court must determine whether substantial evidence supports the ALJ's RFC and step four findings.

**V. Discussion**

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective

---

decisions."). Because Gray filed her application for DIB prior to January 17, 2017, the Court will cite to the old rules that are applicable to claims filed prior to 2017.

evidence as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

### 1. Objective Medical Evidence

The objective medical evidence shows that Gray suffered from meniscal degeneration as early as March 31, 2014. (Tr. 303). A medical report on that date noted "degenerative change of the medial meniscus," with "undersurface fraying at the body of the posterior horn and the lateral undersurface of the anterior horn" as well as "free edge fraying at the body of the lateral meniscus." (Tr. 303). On June 20, 2014, she received an arthroscopy surgery on her left knee from William Garvey, M.D. ("Dr. Garvey") for this condition. (Tr. 300). Following this procedure, Gray wore a leg brace for this condition through September 17, 2014, at which point she gradually transitioned out of the brace and into various home exercise programs. (Tr. 295). Gray returned to Dr. Garvey's office for a follow-up on March 9, 2015, wherein similar issues were shown in her right knee. (Tr. 283).

Gray visited the office of Kyle Woerner, M.D. ("Dr. Woerner") on September 11, 2015 with complaints of pain in her left thumb and right wrist. (Tr. 281). Specifically, she reported "a history of pain that is on the radial side of her hand and wrist as well as volarly along her thumb and wrist," noting that the pain was "worse with work" and that the pain would occasionally wake her up from sleep. (Tr. 281). Based on his examination, Dr. Woerner wrote:

> [Gray] has full range of motion of the shoulders, elbows, forearms, and wrists. She does have some tenderness with DRUJ testing on the right and then on the left. She has no instability. She has full digital motion in all of her digits with no Heberden nodes or flexor tendon nodules. MP joint examination of the thumbs are 0 to 80 degrees bilaterally. IP joint motion is 30 of hyperextension to 45 of flexion bilaterally. She does have a tender A1 pulley on the right thumb with no active triggering. There is a nodule palpable at the A1 pulley level. She can oppose both of her thumbs to the base of the small finger with 60 degrees of palmar abduction and negative Finkelstein test bilaterally. She has a positive

> CMC grind on the right with mild grinding, but it is quite tender. She has negative Tinel's at the carpal and cubital tunnel as well as pronator and Guyon canal. She has negative Tinel's over the dorsoradial sensory nerve. She has no tenderness in the intersection in the outcroppers. She has no grinding in the 1st dorsal compartment with full thumb range of motion. (Tr. 281).

Gray was injured in a car accident on October 31, 2015. (Tr. 75). She was taken to Memorial Hermann Hospital with "left wrist pain, neck pain, and some numbness and tingling in the dorsum of the left hand," but CT scans and radiographs returned nothing of note and she was discharged and returned home. (Tr. 279). She returned to Dr. Woerner for a follow-up on November 6, 2015, this time with complaints of pain in her left wrist. (Tr. 279). Dr. Worner reviewed X-rays taken on the day of the accident and found "minimal scapholunate widening with scapholunate angle of 59 degrees," with "no signs of small joint arthritis other than mild thumb base arthritis known to exist in her contralateral side." (Tr. 279). Regarding Gray's wrist, Dr. Woerner wrote:

> We will get [a] removable wrist splint for this wrist sprain. She certainly does not have any dynamic or static instability, and overall, her wrist is sore diffusely with all movements from her sprain. She has no fractures or instability that would cause her to not be able to bear weight in her left hand.

An examination by Dr. Garvey on February 17, 2016 revealed "what appear[ed] to be a posterior and anterolateral meniscal tear." (Tr. 293). Two MRIs on this date returned conflicting results; one from Dr. Garvey came back negative, while another from Gray's private insurance provider "suggested lateral meniscal tear." (Tr. 292). Gray proceeded with conservative treatment measures and began physical therapy and bracing on March 23, 2016. (Tr. 290).

After filing her claims for disability benefits and supplemental income, Gray visited the office of J. W. Loving, M.D. ("Dr. Loving") on November 17, 2016. There, a physical examination returned the following results:

> There is normal range of motion, motor and sensory findings in the upper and lower extremities. Straight leg raise exam sitting and supine is normal. There is a normal range of motion and strength of both knees. There is some tenderness to palpation in the anterior aspect of both knees. No effusion or crepitus is noted. (Tr. 310-11).

Furthermore, Dr. Loving noted a "mild limitation in the range of motion of the lumbar spine." (Tr. 310). The examination showed slight retrolisthesis and erosion of disc spaces in the vertebrae, with a scoliosis on the left side. (Tr. 314). These symptoms were ultimately described by the ALJ as lumbar spine degenerative disc disease. (Tr. 46).

Here, substantial evidence supports the ALJ's finding at step two and three that Gray's obesity, posterior and anterolateral meniscal tear and lumbar spine degenerative disc disease were severe impairments, and that depression was not a severe impairment. The ALJ properly considered the objective medical evidence in record in evaluating the medically determinable impairments established at step two, including the posterior and anterolateral meniscal tear found by Dr. Garvey and the lumbar spine degenerative disc disease revealed by the examination of Dr. Loving. Accordingly, this factor weighs in favor of the ALJ's decision.

### B. Diagnosis and Expert Opinion

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The Social Security regulations require the Commissioner to evaluate every medical opinion it receives, regardless of its source. 20 C.F.R. § 404.1527(c). The regulations provide in pertinent part that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The ALJ has the ultimate responsibility to determine disability

status. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). When good cause is shown, less weight, little weight, or even no weight may be given to a treating physician's opinion. *Id.* The Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) held that when a treating physician's opinion about the nature and severity of a claimant's impairment is well-supported and consistent with other substantial evidence, an ALJ must afford it controlling weight. The Fifth Circuit further instructed that an ALJ has good cause to discount the opinion of a treating physician where "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456. In such a situation, the ALJ must assess what weight the opinion should be given based on factors enumerated in 20 C.F.R. § 404.1527(c). Those factors include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations. *Id.* These factors need not be considered when there is "competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when "the ALJ weighs treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Newton*, 209 F.3d at 458. Simply put: "[t]he Newton court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it." *Qualls v. Astrue*, 339 F.App's 461, 467 (5th Cir. 2009). An ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion, *Newton,* 209 F.3d at 455, but "cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th

10

Cir. 2000); *Kneeland v. Berryhill,* 850 F.3d 749, 761 (5th Cir. 2017)(ALJ committed error in failing to address examining physician's conflicting opinion thereby making it impossible to know whether the ALJ properly considered and weighed the opinion); *but see Hammond v. Barnhart*, 124 Fed. Appx. 847, 851 (5th Cir. 2005)(failure by ALJ to mention a piece of evidence does not necessarily mean that the ALJ failed to consider it). Thus the absence of an express statement in the ALJ's written decision does not necessarily amount to reversible error because procedural perfection is administrative proceeds is not required. *See, e.g., Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007); *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012)("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.").

In making an RFC determination, the ALJ must determine the claimant's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *2 (SSA July 2, 1996). The responsibility for determining a claimant's RFC is with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

Gray argues that the ALJ's RFC determination failed to give proper weight to her mental limitations, specifically her complaints of depression. Gray also argues that the ALJ was required to perform an evaluation of such complaints on a five-point scale under 20 C.F.R. §§ 404.1520a and 416.920a. On this subject, the ALJ concluded:

> The claimant averred she had depression, treated with Paxil (Hearing Testimony). However, the undersigned cannot find the claimant has a medically determinable impairment based only on the claimant's subjective complaints. Under our regulations, evidence from an acceptable medical source is required to establish the existence of a medically determinable impairment (20 CFR 404.1513(a) and

11

416.913(a)). After a careful review of the record, the undersigned found this requirement had not been established. (Tr. 47).

Upon this record, the ALJ correctly excluded complaints of depression from the RFC determination. The ALJ is required to consider subjective complaints of symptomology only if a medically determinable impairment has been established at step two. Similarly, the regulations require the five-point scale analysis only where a medically determinable impairment has been found. 20 C.F.R. § 416.920a(b)(1). In this case, no such impairment had been found. No formal diagnosis of depression exists in the record. (Tr. 81). Moreover, Gray has no history of mental hospitalizations or other such incidents arising from her depression. (Tr. 62-84, 279-396). So the ALJ's decision to omit complaints of depression from the RFC decision here is consistent with the record and is supported by substantial evidence.

On this point, Gray argues that the ALJ's RFC decision arises out of legal error because the ALJ considered evidence not in record with reference to Dr. Loving's "consultative psychological examination findings." (Tr. 50). Gray correctly argues that no such examination exists in the record or in Dr. Loving's medical reports. The Commissioner suggests that this was a typographical error, as Dr. Loving did not in fact perform a psychological examination of Gray. This may very well be the case, as the ALJ's decision refers incongruously to the "psychological examination findings" in a paragraph dealing primarily with Dr. Loving's physical findings:

> Based on his examination findings, Dr. Loving opined the claimant's ability to sit, stand and move about is unrestricted; she could life, carry and handle objects; had only mild loss of lumbar spine range of motion; and could ambulate effectively without an assistive device (Ex. 33F/3). The undersigned found Dr. Loving's opinion was consistent with his consultative psychological examination findings. (Tr. 50).

The ALJ went on to conclude that "the totality of the evidence, as summarized above, supported finding the claimant was more limited than Dr. Loving opined." (Tr. 50). Thus, Gray was clearly not prejudiced by the ALJ's consideration of the evaluation in question, whatever it was. Upon this record, the error was harmless in that it did not "affect the substantial rights of a party," *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012), nor is it conceivable that the ALJ would have reached a different conclusion but for the error. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). For these reasons, this factor weighs in favor of the ALJ's decision.

### C. Subjective Evidence of Pain

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Farrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task

particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Here, Gray testified about her health and its impact on her daily activities. She offered no testimony or corroboration from her family or friends with respect to her complaints about her condition. Gray testified that she suffered from chronic pain in her left side as a result of her car accident, noting that her left arm is prone to going numb and that she sometimes struggles to lift objects. (Tr. 67). She stated that the pain made it difficult for her to type. (Tr. 68). She estimated that she could sit for "maybe 20 minutes" before her pain level became "unbearable," and that she could stand for "probably about 10 or 12 minutes" and walk "maybe 25 feet" before needing to sit down. (Tr. 68-73). On a one-to-ten scale, Gray rated her pain on a "good day" as "about eight." (Tr. 68). She stated that this pain is elevated to "a 10 plus" when she sits down for too long, but that it subsides to "about between a six to a seven" when she lays down or reclines to "take the edge off." (Tr. 68-69). Gray testified that she takes pain medications "every six to eight hours," but that these medications merely "take[] the edge off" rather than eliminating the pain altogether. (Tr. 69). She noted that she sometimes needs assistance when showering or getting dressed. (Tr. 70). She stated that she is unable to cook or drive because of her pain. (Tr. 72).

Gray completed a Function Report on February 20, 2016. (Tr. 210). She described a typical day as getting out of bed, eating breakfast, then resting in the recliner or bed. (Tr. 210). She stated that she could not walk, sit or stand for extended periods of time due to the chronic pain from her injuries. (Tr. 210). She wrote that her husband would usually help her out of bed and would sometimes help her dress and bathe, adding that other family members would sometimes help her shave, get off the toilet, and care for her hair. (Tr. 214). She noted that she was unable to do house or yard work due to the pain and weakness from her injuries. (Tr. 215-

16). Furthermore, she stated that she cannot go out alone out of fear of falling or stumbling from her knees giving out. (Tr. 216). Gray completed a second Function Report on September 1, 2016. (Tr. 232). There, she indicated that she was able to dress and shave without issue, but that she needed help getting out of the bathtub or shower and that it would be painful for her to sit down on the toilet. (Tr. 233). Gray wrote that she goes outside once or twice a week. (Tr. 235). She stated that she was unable to spend much time with her family out of the house due to the pain in her back and neck. (Tr. 236). She noted that her pain affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, concentrate, complete tasks, and get along with others, but not her seeing, memory, understanding, use of her hands, or ability to follow instructions. (Tr. 237).

Gray argues first that the ALJ's RFC determination should have included further limitations in the use of her arms and hands and her social functioning and memory based on subjective complaints of pain. Regarding concentration and memory, the ALJ found that Gray "was able to watch television; read; and manage money, including pay bills, count change, handle a savings account, and use a checkbook/money order." (Tr. 50). Regarding the use of her arms and hands, the ALJ noted many treatment records wherein Gray "had full strength in her upper extremities." (Tr. 50). Furthermore, in neither Function Report did Gray allege impairment in her memory or in the use of her hands as a result of her pain. (Tr. 218-37). Additionally, the ALJ noted that Gray's subjective assessments of her own pain levels were at times inconsistent, ranging from a 4 to an 8 on a ten-point scale at various instances. (Tr. 50-51). In this case, the ALJ was justified in weighing Gray's subjective complaints against the objective medical evidence of record. In doing so, he found that Gray's complaints were in some cases inconsistent

and in others unsupported by the medical records, and properly assigned priority to the objective evidence where this was the case.

Next, Gray argues that the ALJ erred in disregarding Gray's subjective complaints due to a belief that they were not entirely credible. Gray alleges that Social Security Ruling (SSR) 16-3p, which came into effect two years prior to the ALJ's decision, eliminated the use of the term "credibility" from the controlling policies in this case, precluding the ALJ from disregarding subjective complaints on such grounds. While it is true that SSR 16-3p, this Court has already found that SSR 16-3p does not preclude the "mere use" on the ALJ's part of the term "credibility," especially where the term is used to refer not to the character of the claimant, but rather to inconsistencies between subjective complaints and the objective medical evidence of record. *Alvarez v. Colvin*, No. 4:16-CV-00432, 2017 WL 2712872 (S.D. Tex. June 22, 2017). Rather, the purpose of SSR 16-3p, in its own words, is to "clarify that subjective symptom evaluation is not an examination of an individual's character." *Soc. Sec. Ruling 16-3p: Titles II & Xvi: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Mar. 16, 2016). Upon this record, the ALJ did not act in violation of this policy. In fact, the ALJ declined even to use the term "credibility" in assessing Gray's subjective complaints, instead opting for phrases such as "not entirely consistent with the medical evidence" and "not fully supported by the substantial medical evidence of record." (Tr. 51). Accordingly, this factor supports the ALJ's decision.

### D. Education, Work History and Age

The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that she is not only unable to do her previous

work, but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The record shows that the ALJ questioned Susan Repan, a vocational expert (VE), at the hearing. "A vocational expert is called to testify because of his familiarity with job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling,* 36 F.3d at 436.

Here, the record shows that the following hypothetical questions were posed at the hearing by the ALJ:

> Q: Okay. All right. I want you to assume a person of Ms. Gray's age, education, and work experience. For my first hypothetical, who would have worked at the light exertional level but would have the following non-exertional limitations. The individual could stand and walk a combined four hours in an eight-hour workday. The individual could never climb ladders, ropes, and scaffolds. The individual can occasionally climb ramps and stairs. The individual can occasionally balance, stoop, crouch, kneel, and crawl. Furthermore, the individual could never work at unprotected heights or around dangerous, heavy machinery. Based on those limitations that I've given, could such a person perform the past work of Ms. Gray?

17

>A: I believe she could perform the unit clerk job.

>Q: Okay. All right. For my second hypothetical, I want you to take the same non-exertional limitations as I put in the first hypothetical; however, the individual would be limited to the sedentary exertional level. Could such a person perform the past work of Ms. Gray?

>A: Yes, your honor; she could perform the unit clerk job.

>Q: Okay. And for both of those hypos, is that both as actually and generally performed?

>A: Yes, your honor.

>Q: All right. And for my third hypothetical, if an individual is off-task more than 20 percent of the workday, could such a person perform the past work of Ms. Gray?

>A: No. (Tr. 84-88).

A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. As discussed above, the ALJ's RFC assessment is supported by substantial evidence, and was incorporated in the hypothetical question posed to the VE. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Gray was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Gray could perform past relevant work as a hospital unit clerk. The Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the vocational expert's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Gray was not disabled within the meaning of the Act and therefore was not entitled to benefits. Further, it is clear from the record that the proper legal standards were used to evaluate the evidence presented. For these reasons, this factor weighs in favor of the ALJ's decision.

## VI. Conclusion

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Gray was not disabled within the meaning of the Act, that substantial evidence supports the ALL's decision, and that the Commissioner's decision should be affirmed. As such, it is

ORDERED Plaintiff's Motion for Summary Judgment (Document No. 17), is DENIED, Defendant's Motion for Summary Judgment (Document No. 19) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed at Houston, Texas, this __16th__ day of _____July_____, 2020.

_Frances H. Stacy_
Frances H. Stacy
United States Magistrate Judge